**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**BELLWETHER MUSIC FESTIVAL, LLC,**
**et al.,**

      **Plaintiffs,**

                      **CASE NO. 2:20-CV-3279**
     **v.**                         **JUDGE EDMUND A. SARGUS, JR.**
                             **Magistrate Judge Kimberly A. Jolson**

**AMY ACTON, et al.,**

      **Defendants.**

**OPINION AND ORDER**

The instant matter is before the Court for consideration of Plaintiff Bratwurst Festival, Inc.'s ("Bratwurst") motion to depose Defendant Dr. Amy Acton ("Dr. Acton"). (ECF No. 31). Defendant responded in opposition. (ECF No. 36). For the reasons that follow, Bratwurst's motion is **DENIED**. (ECF No. 31).

**I**

Bratwurst is an Ohio corporation that owns, manages and produces the Bucyrus Bratwurst Festival, which is a multi-day festival held every year in Bucyrus, Ohio. (ECF No. 21 at ¶ 11, 57, 58). The festival is slated to begin August 13, 2020 and end August 15, 2020. (*Id.* at ¶ 60). According to the Complaint, the festival has acquired a significant amount of regional attention over the years through attractions such as daily parades, music performances and food vendors. (*Id.* at ¶ 62, 64). Bratwurst also claims that each festival requires approximately one year of planning, which includes a significant investment of time and expense. (*Id.* at ¶ 63, 66).

Bratwurst seeks a preliminary injunction against the defendants in this case, challenging the constitutionality of several orders promulgated by the State of Ohio that prevent its festival from taking place. (*See generally* ECF No. 23). In particular, Bratwurst claims that Dr. Acton, as well as other defendants, have violated the constitution through several orders, such as the May 29, 2020 Director's Updated and Revised Order, which requires certain businesses and operations including parades, fairs and festivals to remain closed until the Order is rescinded. (ECF No. 4 at 4). According to the Amended Complaint, events, like the Bratwurst festival, are protected by fundamental constitutional rights such as those that pertain to freedom of speech, freedom to peaceably assemble and the fundamental liberty interest innate to all citizens. (ECF No. 21 at ¶ 199-214).

On June 30, 2020, the undersigned held a telephone status conference on Bratwurst's motion for preliminary injunction. (ECF Nos. 29, 33). During the conference, the parties discussed whether Dr. Acton should provide testimony in this case. (*Id.*). After hearing arguments from both sides, the Court instructed the parties to file briefs addressing whether such testimony is warranted. (*Id.*). The parties have filed their respective briefs which are the basis of this Opinion and Order. (ECF Nos. 31, 36).

**II**

The issue before the Court is whether Dr. Acton should be required to submit to deposition for the role that she played in promulgating the orders at issue. Recently, the Sixth Circuit issued *League of Independent Fitness Facilities & Trainers, Inc. v. Whitmer*, Case No. 20-1581, 2020 U.S. App. LEXIS 19691 (6th Cir. 2020) which governs this Court's analysis here. In that case, owners and operators of several Michigan indoor fitness facilities brought suit against the Governor of Michigan in response to several Michigan orders that had temporarily closed certain

fitness center locations. *Id.* at * 3. According to the plaintiffs, the orders violated, in relevant part, the Fourteenth Amendment's guarantee of equal protection of the laws since they shut down fitness centers, but left open bars, restaurants and saloons. *Id.* After concluding that there were no fundamental interests or suspect classifications, the district court applied a rational basis standard of review, and ultimately entered an injunction against the orders. *Id.*

On review, the Sixth Circuit stayed the injunction, explaining that the lower court's decision was based on the misguided conclusion that the Governor was required to adequately explain her unique treatment of indoor fitness facilities, which she had failed to do at a hearing on the preliminary injunction request. *Id.* at *5-7, 10 (citing *FCC v. Beach Communications*, 508 U.S. 307, 313-15 (1993) ("[B]ecause we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature. Thus, the absence of 'legislative facts' explaining the distinction 'on the record' has no significance in rational-basis analysis.")). Instead, the Governor had stated generally that gyms were closed because they amplified the dangers of COVID-19. *Id.* The Sixth Circuit explained that the relevant standard for the orders "merely requires 'rational speculation' that offers 'conceivable support to the Governor's order,'" which is especially true "in the case of a public health crisis like the one presented by COVID-19, where [State] latitude must be especially broad." *Id.* at * 6 (citing *FCC v. Beach Communications*, 508 U.S. at 315). The Court ultimately concluded that the trial court entered the injunction in error because the Governor was not required to affirmatively justify the orders. *Id.* at *6-8.

With respect to the latitude that courts must give government officials during public health crises, Chief Justice Roberts noted in his concurrence in *South Bay United Pentecostal v. Newsom* that "[t]he precise question of when restrictions on particular social activities should be lifted

3

during the pandemic is a dynamic and fact-intensive matter subject to reasonable disagreement." 140 S. Ct. 1613, 1613 (2020). The Chief Justice noted that the latitude afforded to government officials "must be especially broad" and "should not be subject to second-guessing by an 'unelected' federal judiciary, which lacks the background, competence and expertise to assess public health." *Id.* at 1613-1614.

The Government argues that a deposition of Defendant Dr. Amy Acton is not necessary because the orders at issue are entitled to a presumption of validity. (ECF No. 36 at 2). The Government also contends that her testimony implicates second-guessing the wisdom of State emergency measures aimed at combating COVID-19. (*Id.* at 3).

Bratwurst argues that the Court should authorize and direct the deposition of Dr. Acton. (ECF No. 31). According to Bratwurst, Dr. Acton, while serving as the Director of the Ohio Department of Health, developed personal knowledge relevant to this case by "personally [taking] the governmental action at issue and [holding] nearly daily news conferences wherein she specifically addressed the personal actions which she took, as well as the bases for her personal actions." (*Id.* at 1). In addition, Bratwurst argues that Dr. Acton is available to testify in this matter because she no longer directs the Ohio Department of Health. (*Id.*). Finally, Bratwurst contends that certain fundamental constitutional liberties are at risk in this case, requiring the testimony of Dr. Acton. (*Id.* at 4). The Court does not agree.

To be sure, the instant matter involves certain fundamental rights not at issue in *Whitmer*. And while there may be First and Fourteenth Amendment rights implicated here, this case does not involve a content-based regulation of speech, nor does it involve a suspect classification of any kind. Instead, the orders at issue apply equally across the board to protect Ohio citizens from a pandemic. As such, the actions that Dr. Acton took as Director of the Ohio Department of Health

4

may be justified on rational speculation as noted in *Whitmer*. At this juncture, her deposition or testimony on the regulations themselves would not disclose evidence relevant to this case and would not lead to evidence otherwise relevant.

### III

For the reasons set forth above, Bratwurst's motion is **DENIED**. (ECF No. 31).

**IT IS SO ORDERED.**


**7/9/2020**　　　　　　　　　　　　　　　　**s/Edmund A. Sargus, Jr.**
**DATE**　　　　　　　　　　　　　　　　　**EDMUND A. SARGUS, JR.**
　　　　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**